Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, CA 94104
Telephone: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiff Arthur P. Harding II

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arthur P. Harding II, | Case No. |
| Plaintiff, | |
| v. | COMPLAINT |
| JP Morgan Chase Bank, N.A, | (Fair Credit Reporting Act 15 USC § 1681 *et seq*) |
| Defendant. | DEMAND FOR JURY TRIAL |

**Preliminary Statement**

1.    This is an action for damages brought by Arthur P. Harding II against JP Morgan Chase Bank, N.A. for violations of the Fair Credit Reporting Act, 15 USC §1681 *et seq*.  (FCRA) and the California Consumer Credit Reporting Agencies Act, Civil Code § 1785.25(a)-(c).

**The Parties**

2.     Plaintiff Arthur P. Harding II ("Harding") is an individual consumer.

3.     Defendant JP Morgan Chase Bank, N.A. ("Chase") is a national bank with offices throughout the United States.

**Jurisdiction & Venue**

4.    The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the California Civil Code claims pursuant to 15 USC § §

1367.

5.     The defendant regularly conducts business in this district.

## Description of the Case

6.     Defendant Chase issued plaintiff a VISA credit card with a $25,000 credit limit in May 2011.  From that year up to the incident described in this complaint, plaintiff regularly charged his business travel expenses and other charges to the card.  Plaintiff made all payments due on the card in a timely manner until a dispute arose concerning the incident described in this complaint.

7.     Plaintiff Harding, his business associate John E. Camera, and two other associates went to Barcelona, Spain for business from April 7, 2014, through April 12, 2014.

8.     On the evening of April 8, 2014, plaintiff Harding and his three associates went to the Baglung Barcelona nightclub. Harding ordered a drink from a bartender for which he provided his Chase card and his driver's license. The bartender took the card and license and, as plaintiff later learned, made photocopies of both the card and ID.

9.     At the time, unknown to plaintiff, the bartender added a drug to the drink that caused plaintiff to feel extremely drowsy.

10.     Plaintiff did not ask for a second drink, any food, any services, or anything else while in the establishment.

11.     Plaintiff returned to the W Hotel where he was staying. While in the hotel elevator going up to his room, he collapsed due to the drug he had ingested at the club.

12.     At about 6:45 AM the next morning, April 9, 2014, plaintiff received a Fraud Alert email from Chase asking if he had authorized transactions from Baglung Barcelona in the amount of $911.57 and $2,430.84. At the time, plaintiff believed that he had been overcharged for the one drink he ordered in the amount of $911.57, but even though he was grossly overcharged, and not wanting to get into a dispute with Chase, plaintiff responded by email that he had authorized the $911.57 charge. Plaintiff also approved the $2,430.84 charge believing it must have been for something his

business associates ordered. At the time, plaintiff had been drugged and was not thinking clearly. Had he not been drugged, he would have approved the charges.

13.    On the morning of April 9, plaintiff checked his Chase credit card account online and found no additional charges on his account.

14.    From April 9 through April 13, plaintiff continued to use the Chase credit card for the duration of his trip to Barcelona and while traveling back to the U.S. Chase approved each transaction without incident.

15.    On April 14, 2014, Harding attempted to use his Chase card for a $5 charge, which Chase declined. Plaintiff went online to check his Chase account and found six additional charges each dated April 9, 2014, from Baglung Barcelona and Andiare SLU totaling $37,526.06. At that time, plaintiff had never heard of Andiare SLU.

16.    Plaintiff's business associate John E. Camera, who also had a Chase credit card, and who accompanied plaintiff to the Baglung Barcelona establishment had a similar experience. Baglung Barcelona and Andiare SLU fraudulently added $38,898 to his Chase credit card.

17.    All of the charges by Baglung Barcelona and Andiare SLU were fraudulent. The $911.57 charge was fraudulent because one drink does cost $911.57. The $2,430.84 charge was also fraudulent; plaintiff did not authorize the charge directly or indirectly.

18.    After learning about the charges, Harding immediately informed Chase the charges were unauthorized and fraudulent. Chase initially removed the charges from his account while it promised to conduct an investigation.

19.    On June 18, 2014, Chase sent Harding a letter in which it stated that he was responsible for the charges because he "gave authorization to the user involved in this transaction." Chase's justification for making plaintiff responsible for the charges had no factual basis.

20.    Chase sent Harding copies of the documentation it received from Baglung Barcelona and Andiare SLU. The documentation proves that the charges in question were fraudulent. First, the

signatures on the credit card receipts do not match plaintiff's signature. Second, Andiare SLU attached "Operations Forms" ("Formulario de Operaciones") that have Harding's forged signature. The forms are contradictory with the following conflicting statements checked:

- "As cardholder shown above, I accept [sic] the amount charged into my account."

- "I certify that I have neither made nor authorized the above described transactions and the card has always been in my possession." (emphasis in original).

- "I certify that I have authorized and only made the charges relate [sic]."

- "I have received the ordered services relating to the accepted [sic] transaction. The expected delivery date was 08/04/14."

- "the card has been in my possession at the time."

- "the goods services received are in accordance with the characteristics described previously in the merchant [sic]."

21.     The fraudster who filled out the Operations Forms clearly checked all the boxes hoping Chase would process the charges.

22.     Andiare SLU's requests for payment were supported by the same photocopy of plaintiff's credit card and driver's license as Baglung Barcelona, which is additional proof plaintiff never had any contact with anyone at Andiare SLU.

23.     Harding had possession of the Chase card at all times, except for the time the bartender took it to supposedly charge him for one drink at the bar, which proves that the charges were fraudulent.

24.     Chase paid the fraudsters the $38,989 even though the payments put plaintiff's Chase card $32,000 over his $25,000 credit limit. The fact that the charges so greatly exceeded the card limit should have caused Chase to reject the requests for payment.

25.     Except for the initial fraud alert that described in ¶ 12 of this complaint, Chase never sent plaintiff a fraud alert. Chase negligently paid the claims.

26.     An online search shows that other individuals have been defrauded by Baglung Barcelona and Andiare SLU, a fact that Chase should have ascertained as part of its investigation.

27.     On October 7, 2014, plaintiff's former attorney sent Chase a detailed demand for removal of the unauthorized charges. On November 26, 2014, Chase sent plaintiff a letter that states its decision that plaintiff was responsible for the charges was final.

28.     Beginning in October 2014, Chase sent reports to the credit reporting agencies (CRAs) that the Chase credit card was delinquent. Chase has continued to report each month to date that the account is delinquent.

29.     On April 3, 2015, plaintiff sent online disputes to the CRAs asking them to delete the adverse information reported by Chase because the charges were fraudulent.

30.     Following procedures required by the Fair Credit Reporting Act, the CRAs sent automated consumer dispute verification ("ACDV") requests to Chase. Receipt of the ACDVs triggered a requirement that Chase conduct a reasonable investigation of the dispute.

31.     Chase responded to the ACDVs by verifying that its credit reporting was accurate.

32.     Chase failed to conduct a reasonable investigation. Chase willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures that would correct the inaccurate, misleading and incomplete credit information.

33.     Equifax and Experian accepted Chase's verification of the charges and have to date continued to report that Chase charged off the loan and that payments were 30, 60, 90, and 120 days late. Trans Union is reporting that Chase charged off the loan as a bad debt.

34.     As a result of Chase's conduct, plaintiff has suffered actual damages in the form of (a) lost credit opportunities, b) lost business opportunities in the insurance and real estate industry, (c) harm to his credit reputation and credit scores, and (d) emotional distress in the form of mental pain,

anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to plaintiff's great detriment and loss.

35.     Chase Bank is one of the CRAs largest and subscribers. As such, Chase Bank sends customer account information to the CRAs on a monthly basis. Each such transmission includes changes, additions and deletions of customers' account information.

**First Claim: Violations of the Fair Credit Reporting Act—Against Chase**

36.     Plaintiff incorporates by reference ¶¶ 1-35.

37.     The FCRA requires a furnisher such as Chase after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

38.     Within the last two years, defendant Chase provided inaccurate and misleading information to the credit reporting agencies.

39.     Chase violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

    (a) willfully and negligently failing to conduct an investigation of the inaccurate information that plaintiff disputed;

    (b) willfully and negligently failed to review all relevant information concerning plaintiff's account;

    (c) willfully and negligently failing to report the results of investigations to the three national credit reporting agencies;

    (d) willfully and negligently failing to report the inaccurate status of the inaccurate information to the credit reporting agencies;

(e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the credit reporting agencies concerning the inaccurate information disputed by plaintiff;

(f) willfully and negligently failing to provide the credit reporting agencies with the factual information and evidence plaintiff submitted to defendants that proved that the information concerning plaintiff's credit reports was inaccurate;

(g) willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiff's account to the credit reporting agencies;

(h) willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b); and

40.    As a result of the above-described violations of § 1681s-2(b), plaintiff has been damaged.

**Second Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against Chase**

41.    Plaintiff incorporates by reference ¶¶ 1-40.

42.    California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

43.    Chase negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

44.    Chase failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

45.    Based on these violations of Civil Code § 1785.25 (a), plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and

suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

//

## PRAYER

WHEREFORE, plaintiff prays for judgment as follows:

1.      Actual, statutory and punitive damages;

2.      Injunctive relief;

3.      Costs and attorney's fees; and

4.      Such other relief as the Court may deem proper.

Dated: September 2, 2015.

ANDERSON, OGILVIE & BREWER LLP

By   /s/ *Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

Dated: September 2, 2015.

ANDERSON, OGILVIE & BREWER LLP

By *ance/s/ Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiff